UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:20-CV-00048-JHM

CHRISTOPHER JOHNSTON                                                               PLAINTIFF

V.

CHUBB GROUP OF INSURANCE
COMPANIES, GREAT NORTHERN
INSURANCE COMPANY, et al.                                                          DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on its Order for jurisdictional briefing. [DN 15]. Fully briefed, the matter is ripe for decision.

## I.   BACKGROUND

Christopher Johnston and George Tyrell Burchett were employees of Webster County Coal (WCC). [DN 18-1 at ¶ 10]. Burchett and Johnston allegedly met at a WCC mine to engage in a physical altercation. [*Id.* at ¶ 11]. Johnston and Burchett left the premises at the urging of WCC management for the physical altercation. [*Id.* at ¶ 12]. When Johnston exited his vehicle, he allegedly struck Burchett in the head several times and stabbed Burchett with a knife. [*Id.* at ¶ 17]. Burchett died as a result. [*Id.* at ¶ 18]. Then, Johnston plead guilty to manslaughter in the first degree. [*Id.* at ¶ 19]. Later, Sherri Conn, as administrator of George Tyrell Burchett's estate, sued WCC and Johnston for wrongful death in Webster County Circuit Court, alleging that (1) WCC is vicariously liable for the action and liabilities of Johnston under the doctrine of *respondeat superior*; (2) WCC was careless, reckless, and negligent; (3) Johnston was careless, reckless, and negligent; (4) WCC negligently hired and retained Johnston; and (5) loss of consortium. [*Id.* at ¶¶ 21–46].

Great Northern Insurance Company insures WCC. [DN 1-2 at 27]. Johnston requested that Great Northern enter a defense on his behalf based on allegations in the complaint that Johnston was

acting as an employee and representative of WCC. [*Id.* at 29]. In a letter to Johnston's counsel, Great Northern asserted that it had no duty to defend or indemnify Johnston. [*Id.* at 15]. Johnston then brought a declaratory judgment action in Webster County Circuit Court seeking an order from the court recognizing his right to a defense under the duty to defend doctrine. [*Id.* at 29–30].

Great Northern removed the declaratory judgment action to this Court, and Johnston sought to remand it. [DN 14]. The Court denied Johnston's Motion to Remand and ordered jurisdictional briefing from the parties on whether the Court should exercise jurisdiction over this matter under the Declaratory Judgment Act. [DN 14, DN 15].

## II.  LEGAL STANDARD

While the Court has diversity jurisdiction over this matter [DN 14], the Court must still decide whether jurisdiction is appropriate. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court's exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004) (citation omitted). To determine whether to exercise such discretion, and thus whether a case is appropriate for declaratory judgment, this Court considers the five factors enumerated by the Sixth Circuit in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984):

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

2

>  (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
>  (5) whether there is an alternative remedy that is better or more effective.

### III.   DISCUSSION

**A. Factors One and Two: Settlement of the Controversy and Clarification of Legal Relations**

The first two factors are closely related and often considered together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). The Sixth Circuit has developed split lines of precedent for both factors. *Id.* at 555–57. For the first factor, the first line of cases has "held that this factor is met if the declaratory action can settle the insurance coverage controversy presented, even though it will not resolve the underlying state court action." *Auto Owners Ins. Co. v. Trip Cat, LLC*, No. 19-CV-115, 2020 WL 1276096, at *2 (E.D. Ky. Mar. 17, 2020) (citation omitted). "In the first line of cases, focusing just on the insurance controversy, a technical or legal issue is often at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed." *Employers Ins. Co. of Wausau v. Duro-Last Roofing, Inc.*, No. 11-10206-BC, 2011 WL 2119360, at *6 (E.D. Mich. May 27, 2011).

The second line of cases "held that although such declaratory actions might clarify the legal relationship between the parties, they ultimately fail factor one analysis by failing to settle the ultimate controversy between the parties which is ongoing in state court." *Trip Cat*, 2020 WL 1276096, at *2 (citations omitted). "These cases often involve factual disputes that are also at issue in the state court, or instances where the state court plaintiff has not been joined." *Id.* (citations omitted); *Employers Ins. Co. of Wausau*, 2011 WL 2119360, at *6 ("In the second line of cases, focusing on the controversy as a whole, resolution of disputed facts in the underlying case will also resolve the disagreement about coverage.").

For the second factor, on one hand, "the Sixth Circuit held that for a declaratory judgment to satisfy factor two, it must simply provide a final resolution of the discrete dispute presented and need not settle all the relations in state court." *Trip Cat*, 2020 WL 1276096, at *3 (citation omitted). On the other hand, the second factor is not met "when the judgment would not clarify the legal relations between the other parties to the state court action who may have been potentially affected by the judgment." *Id.* (citation omitted).

In this case, the coverage dispute is about whether Great Northern's policy imposes a duty to defend Johnston in the underlying state court action. The policy pledges to pay damages "for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies" [DN 18-2 at 18]. Under the policy, an occurrence "means an accident . . . ." [*Id.* at 42]. Great Northern argues that Johnston's alleged conduct is not an "occurrence" under the policy in part because Johnston allegedly plead guilty to first degree manslaughter. [DN 22 at 6].

"A guilty plea is an admission of all the elements of a formal criminal charge." *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 622 (E.D. Ky. 2011) (cleaned up). "Thus, when a defendant pleads guilty, he admits and is estopped from relitigating the material facts alleged in the information or indictment, and a plaintiff is entitled to introduce pleas from criminal cases in subsequent civil cases to establish all matters of fact and law necessarily decided by the conviction." *Id.* (cleaned up); *Safeco Ins. Co. of Illinois v. Brown*, No. 3:10-CV-00359-H, 2012 WL 13027839, at *3 n.1 (W.D. Ky. Oct. 2, 2012) ("A criminal conviction thus may be used to preclude re-litigation of that issue in later civil trials, and guilty pleas are treated as the same as jury verdicts of guilt.") (citations omitted).

The complaint in the underlying state court action alleges Johnston later pled guilty to manslaughter in the first degree as a result of the altercation between Johnston and Burchett. [DN 18-1 at ¶ 19]. Under Kentucky law, manslaughter in the first degree requires intent. K.R.S. § 507.030.

4

Based on how "occurrence" is defined in the policy, it appears the Court will not need to engage in fact finding and it will not affect the resolution of the issues presented in the underlying action. The declaratory action will settle the controversy.

Conn's argument that there is a question of fact in the underlying state court action about whether Johnston and Burchett were acting within the scope of their employment does not weigh against exercising jurisdiction. [DN 16 at 6]. While the state court will likely have to determine the scope of employment issue to resolve the liability issues against WCC, that issue does not impact whether Johnston's actions were an "occurrence" under the policy.

For the second factor, the Court's decision will clarify the legal relationship between Johnston and Great Northern in addressing the coverage issue. Thus, the second factor weighs in favor of exercising jurisdiction.

### B. Factor Three: Procedural Fending and Res Judicata

"The third factor to consider is whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*." *Flowers*, 513 F.3d at 558. This factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Id.* (cleaned up). The Sixth Circuit has held that it is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted).

Here, Johnston filed his declaratory judgment action in state court after Conn filed her underlying state court action. [DN 1-2 at 2–6]. Great Northern then removed Johnston's declaratory judgment action to this Court. [DN 14]. There is no reason to believe that Johnston filed its declaratory judgment action in state court motivated by procedural fencing or to create a race to res

5

judicata. Nor is there evidence that Great Northern removed the action with any improper motive and removal was its right. The Court finds this factor weighs in favor of exercising jurisdiction.

### C. Factor Four: Increase of Friction and Improper Encroachment

In considering the fourth factor—whether the exercise of federal jurisdiction would increase friction between federal and state courts—three additional sub-factors are considered:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citation omitted).

#### 1. Importance of Underlying Factual Issues to Informed Resolution of the Case

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Where "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the exercise of jurisdiction would be inappropriate. *Id.* (citation omitted). The first sub-factor weighs in favor of exercising jurisdiction because the coverage question of whether Johnston's action is an "occurrence" under the policy is not dependent on the outcome of a factual inquiry in the underlying state court action.

#### 2. State Court's Position to Evaluate Factual Issues

The second sub-factor focuses on whether this Court or the state court is in a better position to resolve those underlying factual issues. The Sixth Circuit "generally consider[s] state courts to be in a better position to evaluate novel questions of state law." *Id.* (citations omitted). However, that does not mean that "a district court should always turn away a declaratory judgment action when an

6

undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion." *Id.* (citation omitted). Here, the Court will not have to engage in any fact finding to determine whether Johnston is covered under the policy. There also does not appear to be any novel questions of state law. Therefore, this sub-factor weighs in favor of exercising jurisdiction.

### 3. Close Nexus Between Issues and State Law and Policy

The final sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Id.* at 561. The interpretation of insurance contracts is a "question[] of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous*, 373 F.3d at 815. Nevertheless, this does not mean that the Court must abstain from hearing the matter. After all, "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Flowers*, 513 F.3d at 561 (citation omitted). Here, the question of whether Johnston's alleged action is an "occurrence" under the policy does not implicate fundamental state policy. The third sub-factor weighs in favor of exercising jurisdiction.

### D. Factor Five: Alternative Remedy

The final factor to consider is the availability of alternative remedies that are better or more effective than a federal declaratory judgment. A better alternative may exist where "state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions." *Encompass Indem. Co. v. Gray*, 434 F. Supp. 3d 560, 575 (W.D. Ky. 2020) (citations omitted). The "inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

Here, the procedural posture is different than other typical cases. It appears that more often *insurance companies* seek a declaratory action in federal court, where an alternative remedy could be

7

seeking a declaratory judgment in state court or filing an indemnity action. *See e.g., Flowers*, 513 F.3d at 550; *United Specialty Ins. Co. v. Cole's Place Inc.*, 936 F.3d 386, 394 (6th Cir. 2019); *Trip Cat*, 2020 WL 1276096, at *1. It was not Great Northern who filed the declaratory judgment action in state court, instead Johnston initially brought the declaratory action in a Kentucky court—a court that presents an available alternative remedy. K.R.S. § 418.040. Then, Great Northern removed Johnston's action to federal court. [DN 14]. Contrary to Great Northern's argument that there are no alternative remedies [DN 18 at 13], Great Northern could have chosen not to remove the declaratory judgment action to federal court and litigated in state court. *See Clifford v. Church Mut. Ins. Co.*, No. 2:13-CV-853, 2013 WL 6199265, at *5 (S.D. Ohio Nov. 27, 2013), *report and recommendation adopted*, No. 13-CV-853, 2014 WL 4805473 (S.D. Ohio Sept. 26, 2014) ("This case was removed [by the insurance company] from the Court of Common Pleas for Licking County, Ohio. That court certainly presents an available alternative remedy to that offered by this Court. The availability of this state court remedy militates against the exercise of jurisdiction by this Court.") (citation omitted). This factor weights against exercising jurisdiction.

## IV. CONCLUSION

At least four of the five factors weigh in favor of exercising jurisdiction. For the reasons set forth above, **IT IS HEREBY ORDERED** that the Court shall exercise its jurisdiction under the Declaratory Judgment Act.

*Joseph H. McKinley Jr., Senior Judge*
United States District Court

August 18, 2020

cc: counsel of record