UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:20-CV-00048-JHM

CHRISTOPHER JOHNSTON                                          PLAINTIFF

V.

CHUBB GROUP OF INSURANCE
COMPANIES, GREAT NORTHERN
INSURANCE COMPANY, et al.                                    DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Christopher Johnston's Motion for Partial Summary Judgment and Defendant Great Northern Insurance Company's Motion for Summary Judgment. [DN 27, DN 28]. Fully briefed, the matter is ripe for decision. For the following reasons, Johnston's motion is **DENIED** and Great Northern's motion is **GRANTED**.

### I.     BACKGROUND

Christopher Johnston and George Tyrell Burchett were employees of Webster County Coal. [DN 18-1 at ¶ 10]. Burchett and Johnston allegedly met at a Webster County Coal mine to engage in a physical altercation. [*Id.* at ¶ 11]. Johnston and Burchett left the premises at the urging of Webster County Coal management for the physical altercation. [*Id.* at ¶ 12]. When Johnston exited his vehicle, he allegedly struck Burchett in the head several times and stabbed Burchett with a knife. [*Id.* at ¶ 17]. Burchett died as a result. [*Id.* at ¶ 18]. Then, Johnston pleaded guilty to manslaughter in the first degree. [*Id.* at ¶ 19; DN 28-2]. Later, Sherri Conn, as administrator of Burchett's estate, sued WCC and Johnston for wrongful death in Webster County Circuit Court, alleging that (1) Webster County Coal is vicariously liable for the actions and liabilities of Johnston under the doctrine of *respondeat superior*; (2) Webster County Coal was careless, reckless, and negligent; (3) Johnston was careless,

reckless, and negligent; (4) Webster County Coal negligently hired and retained Johnston; and (5) loss of consortium.  [DN 18-1 at ¶¶ 21–46].

Great Northern insures Webster County Coal.  [DN 1-2 at 27].  Johnston requested that Great Northern enter a defense on his behalf based on allegations in the underlying complaint that Johnston was acting as an employee and representative of Webster County Coal.  [*Id.* at 29].  In a letter to Johnston's counsel, Great Northern asserted that it had no duty to defend or indemnify Johnston.  [*Id.* at 15].  Johnston then brought a declaratory judgment action in Webster County Circuit Court seeking an order from the court recognizing his right to a defense under the duty to defend doctrine.  [*Id.* at 29].

Great Northern removed the declaratory judgment action to this Court, and Johnston sought to remand it.  [DN 14].  The Court did not remand the case and it decided to exercise jurisdiction under the Declaratory Judgment Act.  [DN 14, DN 23].  Johnston moved for partial summary judgment; Great Northern then filed a cross-motion for summary judgment.  [DN 27, DN 28].  The only issue is whether Great Northern has a duty to defend Johnston.

## II.   STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the nonmoving party, the nonmoving party must do more than merely show that there is some "metaphysical doubt

as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" FED. R. CIV. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

## III.   DISCUSSION

### A.  Kentucky Law on Insurance Contracts and the Duty to Defend

The parties and the Court agree that Kentucky law applies here.  Interpretation of an insurance contract in Kentucky is a question of law.  *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000) (citation omitted).  "In interpreting insurance contracts, Kentucky courts seek to determine the intention of the parties according to the language of the contract." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008) (citing *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006)).  When the insurance policy is clear and unambiguous, the policy is enforced as written.  *Atl. Specialty Ins. Co. v. Stanley*, No. 19-5259, 2019 WL 4440402, at *2 (6th Cir. Aug. 23, 2019) (citing *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002)).   If the insurance policy has language that is ambiguous, "[c]ourts construe ambiguous terms against the insurer, in favor of the insured's reasonable expectations . . . and construe exceptions and exclusions 'narrowly . . . to effectuate insurance coverage.'" *Liberty Corp. Capital Ltd. v. Sec. Safe Outlet*, 577 F. App'x 399, 404 (6th Cir. 2014)  (citing *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003).  Johnston has the burden to show that the claims fall within the policy's coverage. *Liberty Corp. Capital Ltd.*, 577 F. App'x at 404.  (citing *N. Am. Acc. Ins. Co. v. White*, 80 S.W.2d 577, 578 (1935)).  Great Northern has the burden to prove that an exclusion applies.  *Id.* (citing *Ky.*

*Sch. Bds. Ins. Trust v. Bd. of Educ. Of Woodford Cnty.*, No. 2002-CA-001748-MR, 2003 WL 22520018, at *9 (Ky. Ct. App. Nov. 7, 2003) (unpublished)).

Regarding the duty to defend, "an insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 79 (Ky. 2010) (citation omitted). But "an insurer need not always defend against a claim it believes falls outside the policy it issued." *Id.* Instead, "if an insurer makes a determination that the claim is not covered, it may, among other equally valid choices, 'elect not to defend.'" *Id.* (citation omitted).

"'The determination of whether a defense is required must be made at the outset of the litigation' by reference to the complaint and known facts." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (quoting *James Graham Brown Found., Inc. v. St. Paul Fire Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)); *KSPED LLC v. Virginia Sur. Co.*, 567 F. App'x 377, 383 (6th Cir. 2014) ("Nevertheless, the allegations in the complaint do not contain the only relevant facts. Under Kentucky law, the decision whether to defend 'must be made at the outset of litigation by reference to the complaint and *known facts*.'") (citations omitted).

## B. Whether the Policy Covers the Incident

The Court must first determine whether Johnston's altercation is covered under the policy. The "Bodily injury and Property Damage Liability Coverage" section limits coverage to incidents that are an "occurrence":

> Subject to all the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
> - imposed by law; or
> - assumed in an **insured contract**;
>
> For **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

4

[DN 32-1 at 1].   The primary issue here is whether Johnston's altercation with Burchett is an "occurrence" under the policy.   Under the policy, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  [*Id.* at 4].

"Accident" is not defined in the policy.  "Occurrence" and "accident" are not ambiguous terms in the policy.  *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 508 (6th Cir. 2003) ("In light of the Kentucky Supreme Court's analysis of 'accident' in *Fryman* and the Kentucky Court of Appeals's subsequent reliance on *Fryman* when interpreting the 'occurrence' terms of insurance policies, we conclude that these terms were not ambiguous in the policy in question.").  "In the context of an insurance policy, the word 'accident' should be interpreted in accordance with its common usage." *Stone*, 34 S.W.3d at 811 (citation omitted).  The plain meaning of "'accident' denotes something that does not result from a plan, design, or an intent on the part of the insured." *Id.* at 812 (citation omitted).

### 1.  Collateral Estoppel

The Court turns to whether the altercation was an "occurrence" under the policy.  The underlying complaint alleges that Johnston pleaded guilty to manslaughter in the first degree.  [DN 27-2 ¶ 18].  Great Northern argues that Johnston is collaterally estopped from arguing that striking and stabbing Burchett is an occurrence under the policy.  [DN 28-1 at 8].

Under K.R.S. § 507.030(1)(b), " a person is guilty of manslaughter in the first degree when (b) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in subsection (1)(a) or KRS § 507.020."  "A guilty plea is an admission of all the elements of a formal criminal charge." *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 622 (E.D. Ky. 2011) (cleaned up).

Under certain circumstances, a criminal conviction may be used in later civil litigation to collaterally estop a party in Kentucky.  *Maxum Indem. Co. v. Broken Spoke Bar & Grill, LLC*, 420 F. Supp. 3d 617, 627 (W.D. Ky. 2019) (citation omitted); *ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d at 622 ("Thus, when a defendant pleads guilty, he admits and is estopped from relitigating the material facts alleged in the information or indictment, and a plaintiff is entitled to introduce pleas from criminal cases in subsequent civil cases to establish all matters of fact and law necessarily decided by the conviction."); *Safeco Ins. Co. of Illinois v. Brown*, No. 3:10-CV-00359-H, 2012 WL 13027839, at *3 n.1 (W.D. Ky. Oct. 2, 2012) ("A criminal conviction thus may be used to preclude re-litigation of that issue in later civil trials, and guilty pleas are treated as the same as jury verdicts of guilt.") (citations omitted).

"Estoppel is appropriate when a judgment in a former action estops re-litigation of those matter necessarily involved and decided in the previous action." *Maxum Indem. Co.*, 420 F. Supp. 3d at 627 (citation omitted).  In the complaint of the underlying action, Conn alleges that after Johnston left the mine premises and exited his vehicle, he allegedly struck Burchett in the head several times and stabbed Burchett with a knife.  [DN 18-1 ¶ 17].  Burchett died as a result.  [*Id.* at ¶ 18].  Then, according to the complaint, Johnston pleaded guilty to manslaughter in the first degree.  [*Id.* at ¶ 19].

Collateral estoppel precludes Johnston from asserting any facts inconsistent with his plea of guilt to manslaughter in the first degree.  *See Maxum Indem. Co.*, 420 F. Supp. 3d at 627 ("Gribbins's conviction therefore estops him from asserting any facts inconsistent with the jury's finding in his criminal case.").  Johnston cannot assert that his actions were an accident because he pleaded guilty to first degree manslaughter, which requires "intent to cause the death of another person." K.R.S. § 507.030(1)(b).  Thus, Johnston cannot possibly be covered under the policy as the alleged altercation between Johnston and Burchett that resulted in Burchett's death is not an occurrence. Because there is no coverage here, the Court need not address Great Northern's argument that

Kentucky's inferred intent doctrine also supports a finding of no coverage.[1]  [DN 33 at 10].  The Court also need not address whether Johnston is an "insured" under the policy because there is no coverage whether Johnston is insured or not.  [DN 28-1 at 11–14].

Johnston attempts to skip a step in the analysis with his strained argument that a reasonable force exception in the "Expected or Intended Injury" exclusion extends the duty to defend to Johnston because it provides him coverage under the policy; the Court does not need to go any further in its analysis because it has determined that there is no coverage, and therefore, no duty to defend. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 78 n.35 (Ky. 2010) ("[A] court need not consider the applicability of an exclusion if there is no initial grant of coverage under the policy. . . .  Since we conclude that there is no coverage in this case because there was no occurrence, we need not examine any exclusions.").

"[E]xclusion clauses do not grant coverage; rather, they subtract from it."  *Atl. Specialty Ins. Co. v. Stanley*, No. 19-5259, 2019 WL 4440402, at *3 (6th Cir. Aug. 23, 2019) (quoting *Ryan v. Pa. Life Ins.¸*123 S.W.3d 142, 144 (Ky. 2003)).  "Thus, the court will not look to the language of the exclusion to determine coverage."  *Netherlands Ins. Co. v. Jeffries Const., Inc.*, No. 3:10-CV-754, 2013 WL 1151974, at *5 (W.D. Ky. Mar. 19, 2013).  Any language in an exclusion only becomes relevant after the Court has first determined if the claim is covered under the coverage provisions of the policy.  *Id.*  ("[I]t would be putting the cart before the horse to determine that because a particular claim does not fit within an exclusion, it must be covered.").

In relying on this exclusion to show that there is coverage under the policy, Johnston has not met his burden of showing that there is coverage under the policy because the exclusion is only

---

[1]The Court does note that Kentucky courts probably would infer intent here where Johnston allegedly struck Burchett in the head several times and stabbed him with a knife.  [DN 18-1 ¶ 17]; *see Stone*, 34 S.W.3d at 813 ("If a trial judge may infer intent to harm from the act of punching someone in the face, then *a fortiori*, a trial judge may infer intent to harm from the act of pointing and shooting a rifle at an infant at close range.").

relevant if the claim is covered under the coverage provision of the policy.  Here, the Court has already determined that there is no coverage under the coverage provision of the policy.  Thus, the reasonable force exception to the exclusion will not give Johnston coverage when he does not have coverage under the coverage provision.

### IV.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Johnston's motion is **DENIED** and Great Northern's motion is **GRANTED**.

Joseph H. McKinley Jr., Senior Judge

United States District Court

February 4, 2021

cc: counsel of record